IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

FEBRUARY 1998 SESSION

FILED

June 9, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| DALE MORRIS JENKINS, | * | C.C.A. # 01C01-9702-CC-00051 |
| Appellant, | * | MONTGOMERY COUNTY |
| VS. | * | Hon. Robert W. Wedemeyer, Judge |
| STATE OF TENNESSEE, | * | (Post-Conviction) |
| Appellee. | * | |

For Appellant:

Wade Bobo
129 South Third Street
Clarksville, TN 37040

For Appellee:

John Knox Walkup
Attorney General and Reporter

Lisa A. Naylor
Assistant Attorney General
Criminal Justice Division
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

Arthur F. Bieber
Assistant District Attorney General
204 Franklin Street, Ste. 200
Clarksville, TN 37040

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

<u>OPINION</u>

The petitioner, Dale Morris Jenkins, appeals from the trial court's denial of post-conviction relief. Convicted of first degree murder, the petitioner received a sentence of life imprisonment for the 1991 murder of the victim, Florence Ogburn. In this appeal of right, the single issue presented for our review is whether the petitioner's trial counsel was ineffective.

We find no error and affirm the judgment of the trial court.

In February of 1991, the petitioner telephoned his mother and indicated that he might have harmed the victim. A family member alerted the authorities who, upon investigation, found the victim at her residence stabbed to death. Officers found a meat fork in the petitioner's back pocket which medical experts were later able to identify as the murder weapon. Arresting officers described the petitioner as having bloodshot eyes, very sleepy, and intermittently incoherent. He was splattered with blood. The petitioner claimed to have taken prescription medicine and aspirin for several days prior to the murder and contended that he could not recall stabbing the victim.

After his conviction, the petitioner waived the motion for a new trial and his right to appeal. In 1993, he filed this petition for post-conviction relief, asserting as follows:

> (a)  the jury charge permitted a finding of guilt on a lower standard than that which the constitution allows;
>
> (b)  trial counsel was ineffective for failing to object to improper jury instructions on the burden of proof and the definition of premeditation;
>
> (c)  trial counsel was ineffective for failing to object to the lack of proof of an essential element of the offense;

(d)     trial counsel was ineffective for failing to develop a defense;

(e)     trial counsel was ineffective for failing to appeal the conviction; and

(f)     the evidence was insufficient to support a conviction for first degree premeditated and deliberate murder.

The petitioner also requested a delayed appeal. At the conclusion of the evidentiary hearing, the trial court granted a delayed appeal and otherwise pretermitted the claim of ineffective assistance of counsel. In the delayed appeal, the petitioner argued that the evidence was insufficient and that his counsel was ineffective because he made claims during opening statement that could not be established by the proof. This court reversed the grant of a delayed appeal, refused to address the claim of insufficient evidence, and remanded to the trial court for a full evidentiary hearing on the post-conviction ineffective assistance of counsel claim. Dale M. Jenkins v. State, C.C.A. No. 01C01-9405-CC-00156 (Tenn. Crim. App., at Nashville, Apr. 13, 1995).

At the conclusion of the post-conviction hearing, the trial court denied relief. This appeal followed. A number of the issues raised in the original petition were not asserted in this appeal as grounds for relief and, in consequence, have been waived. See Ct. Crim. App. R. 10(b). The brief of the petitioner addresses only the issue of ineffective assistance of counsel.

The petitioner argues that his trial counsel was ineffective during and after trial for having failed to notify the trial judge of "the difficulty he was having in communicating with [the petitioner]." He also argues that his trial counsel was ineffective for failing to perfect a direct appeal of his conviction.

3

In order for the petitioner to be granted relief on grounds of ineffective assistance of counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would likely have been different. Strickland v. Washington, 466 U.S. 668 (1984); Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

This court may not second-guess the tactical and strategic choices made by trial counsel unless those choices are uninformed because of inadequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Trial counsel may not be deemed ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276 (Tenn. Crim. App. 1980). The reviewing courts must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 690.

The findings of fact made by the trial court are conclusive and will not be disturbed on appeal unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); Graves v. State, 512 S.W.2d 603 (Tenn. Crim. App. 1973). The burden is on the petitioner to prove his allegations by a preponderance of the evidence. McGee v. State, 739 S.W.2d 789 (Tenn. Crim. App. 1987); Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

At the evidentiary hearing, the thirty-six-year-old petitioner testified that at the time of the murder, he was taking Dilantin for seizures. The petitioner denied that the drug caused confusion. He acknowledged that soon after his arrest he was

4

evaluated and determined competent to stand trial but, within the next three months, he began experiencing confusion and weakness:

> One night ... I fell down in the middle of the floor and just started seeing orange spots all over the wall. ... I tried to get up and I couldn't .... After then ... I just got weaker and weaker and weaker .... I couldn't do nothing but just lay there. I couldn't get up and walk. I couldn't see straight. I couldn't write a letter because I couldn't see the paper. I couldn't dial the telephone because I couldn't see it. I couldn't go to the bathroom. I had lost all functions. I don't know why.

The petitioner claimed that his condition persisted until several weeks after the conclusion of his trial. He contended that during his pre-trial incarceration, he was taunted by other inmates and placed in isolation. He maintained that he slept constantly during this period of time and had no idea that six months had passed before his trial began.

The petitioner acknowledged his awareness that he would be tried for first degree murder but claimed his general state of confusion prevented him from assisting in the preparation of a defense. He testified that his trial counsel visited on only three or four occasions for less than ten minutes each time. The petitioner also claimed that he was not able to assist his counsel in preparation for the cross-examination of witnesses and that he "went along with everything." He recalled that three days after his conviction, his trial counsel asked if he wanted to appeal. He remembered saying no but only did so because "I didn't have the slightest idea what was going on .... [m]y mind was all messed up." The petitioner asserted that, although he thought he had explained his confusion to the trial judge at the hearing on the waiver of appeal, "I couldn't communicate to nobody."

The petitioner testified that his confusion stemmed from medication he was given while incarcerated. He asserted that he had believed that he was taking

twice as much Dilantin or an additional medication not originally prescribed. The petitioner also explained that a doctor indicated that Dilantin had built up in his system, due to his inactivity, and had become toxic. He testified that he "started coming around" after he stopped taking the medication. There was no expert testimony to support his claims.

David Howington, an inmate and trusty at the Montgomery County jail, recalled that he had taken food to the petitioner three times per day during his term of isolation. He asserted that the petitioner was "crazy" and was taunted and placed in isolation only after he had thrown urine and feces on other prisoners. He remembered that the petitioner was "really incoherent .... He'd mumble [and] his hand would be shaking ...." On seeing the petitioner several years after the conviction, Howington concluded that the petitioner's condition had changed dramatically: "You can talk to him now. He understands you. He talks."

The petitioner's trial counsel testified that he visited the petitioner in jail eight to twelve times prior to trial. He recalled the petitioner as being "skinny, almost anorexic. His personal hygiene was poor. ... He has talked today more than he did the whole time that I talked to him preparing for trial. He was not talkative. He appeared to be very depressed, very subdued." Trial counsel remembered that the only helpful information the petitioner provided to him before trial concerned his seizures and a reference to his childhood, which trial counsel described as "traumatic." He recalled that the petitioner's attitude had been fatalistic during the months preceding trial and remembered that during pre-trial discussions with the petitioner, "he would seem to get frustrated with me and say look man[,] I broke the rules[. C]an't we just get on with this. ... It was almost why are you bothering me with all this trial stuff, they got me."

6

Trial counsel testified that the petitioner had undergone a mental evaluation in an effort to develop a mental defense and was determined competent to stand trial. Trial counsel stated that the petitioner's mother, who provided some medical records, testified at trial. He recalled that the problems the petitioner experienced with the jail's general population was due to the petitioner's depression and taunting by other prisoners. Trial counsel recalled that he had decided not to bring these difficulties up during trial because he thought they might portray the petitioner as a vicious, hostile person.

Trial counsel testified that he had met with the petitioner to discuss the appeal process. He specifically recalled that the petitioner was opposed to further proceedings. Trial counsel, who informed the petitioner that waiving an appeal was against his best interest, insisted on a proceeding before the trial judge so as to establish a record of the waiver of appeal. He recalled that both he and the trial judge explained to the petitioner the effects of the waiver. The trial court found as follows:

> The [petitioner] was advised at length of his post-trial and appellate rights, which were explained to him using legal terminology, "plain [E]nglish," and with examples. The [petitioner] stated that he understood those rights, and the Court finds that the [petitioner] did understand his rights.
> The [petitioner] was emphatic, positive and clear that he did not wish his trial defense attorney to pursue a New Trial Motion, nor any appeal of his conviction or sentence.

In the order denying the petition for post-conviction relief, the trial court held as follows:

> [T]he waiver of new trial motion and waiver of appeal was done only at the request of the Petitioner, and the record clearly reflects his attorney's advice not to waive those matters.
> Further, this Court finds that the performance of

> his attorney did not fall below that reasonably expected
> of defense counsel ....

The testimony presented by the petitioner conflicted with that of his trial counsel. The petitioner claimed he was unable to communicate, to speak, read or eat and could only sleep in the months before trial. His trial counsel testified that, although the petitioner appeared fatalistic and provided little assistance in forming a mental or factual defense, he was able to communicate that he felt he had been caught and wanted to get on with the trial. Moreover, trial counsel took precautionary steps to make sure the petitioner understood the rights he was waiving. The trial court found the petitioner understood his rights and the ramifications of waiver. In addition, the trial court concluded that trial counsel had rendered effective assistance to the petitioner. The court's ruling implicitly accredited the testimony of trial counsel over that of the petitioner. In our view, the record supports this conclusion.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
William M. Barker, Judge


_____
Curwood Witt, Judge