IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2001

## ELISA COCHRAN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for McMinn County**
**No. 00-396     R. Steven Bebb, Judge**

_____

**No. E2000-02795-CCA-R3-PC**
**January 29, 2002**
_____

The Petitioner was convicted of felony murder and sentenced to life in prison.  This Court affirmed the conviction on direct appeal.  The Petitioner subsequently filed a petition for post-conviction relief, alleging that her trial attorney was ineffective.  The post-conviction court denied relief, and this appeal ensued.  Finding no error, we affirm the judgment of the post-conviction court denying relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Cynthia M. Fort, Nashville, Tennessee, for the Appellant, Elisa Cochran.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Jerry N. Estes, District Attorney General; and William A. Reedy, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

### I.  Background

The Petitioner was convicted in 1996 of felony murder and is currently serving a sentence of life in prison.  On appeal, this Court affirmed the conviction.  See State v. Elisa Cochran, No. 03C01-9708-CR-00353, 1998 WL 783343 (Tenn. Crim. App., Knoxville, Nov. 3, 1998), perm app. denied (Tenn. May 10, 1999).

The Petitioner filed a timely petition for post-conviction relief, alleging that she received ineffective assistance of counsel at trial.  Specifically she states in her petition for post-conviction relief that "prior to trial my attorney and I only met four times to discuss my case."  She also states that during the period of time after her arrest and prior to trial, she was suffering from severe emotional and mental stress, that her attorney did not request a mental evaluation for her, and that

an evaluation was not performed prior to trial. She also complains that her attorney did not investigate her family's mental health history and that she had extreme difficulty communicating with her trial attorney.

In a memorandum supporting the petition for post-conviction relief, the Petitioner alleges that her trial attorney's "inexcusable lack of contact with her resulted in ineffective representation of her at trial." The Petitioner also asserts that trial counsel's "excessive contact with the Defendant's family members caused the attorney confusion regarding the facts of the case, impaired his ability to properly represent her and violated her attorney/client privilege." The memorandum alleges that because the trial attorney had limited contact with his client, he failed to "recognize and appreciate" the Petitioner's impaired mental and emotional capacities. The Petitioner avers that had trial counsel investigated the Petitioner's "apparent impairment," he would have discovered a "family history of mental illness and incapacity."

The Petitioner also claims that her trial attorney was ineffective for failing to object to testimony from a witness at trial who repeated "inculpatory statements" made by the Petitioner's husband. In addition, the Petitioner complains that her trial attorney failed to object to testimony at trial pertaining to the fact that her husband had failed a polygraph test. The Petitioner further alleges that her trial attorney was ineffective because he failed to request that the testimony pertaining to the husband's statements and any reference to a polygraph be "stricken." Finally, the Petitioner alleges that her trial attorney failed to request a curative instruction regarding this issue. The trial court conducted a hearing on the petition and denied post-conviction relief.

## II. Analysis

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001) (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). A post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result, id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

The post-conviction court heard the testimony of the Petitioner's mother, the Petitioner, and trial counsel. The Petitioner's mother testified that she was concerned about her daughter's physical and emotional state, and she stated that she had expressed this concern to the Petitioner's trial counsel prior to trial. The Petitioner's mother also testified that she asked trial counsel for help in having the Petitioner hospitalized for an evaluation and that trial counsel said he could not do it. The Petitioner's mother stated that she and the Petitioner's father hired a psychiatrist to treat the Petitioner, but this was done after the trial. The Petitioner testified that her trial counsel did not believe her and had his own theory about the crime. She testified that she met with her trial counsel three or four times during the two months before the trial.

Trial counsel testified that he had been practicing law since 1983 and that he was an assistant public defender when he represented the Petitioner. His testimony indicated that he was experienced in criminal matters and had handled numerous other murder cases. He stated that in this case, he had the assistance of "everybody in the office." He characterized the Petitioner as "manipulative," and stated that he had difficulty getting her to come to his office after she made bond. Trial counsel did not remember the Petitioner's family expressing concerns about the Petitioner's mental health. Trial counsel indicated that he had no reason to believe that a mental evaluation of the Petitioner was needed. Trial counsel cited "trial strategy" as the reason that he did not object to the testimony of witnesses concerning a polygraph and statements by the Petitioner's husband.

In its findings of fact and conclusions of law, the post-conviction court determined that trial counsel's handling of the issues pertaining to testimony from witnesses as to statements made by the Petitioner's husband and testimony about a polygraph examination taken by the Petitioner's husband

were "a matter of trial strategy and [the court felt] like that does not rise to the level of ineffective assistance of counsel."

On direct appeal, this Court addressed these issues as follows:

The second issue presented for review is that the defendant was denied a fair trial by the introduction of her husband's testimony and his prior statements and by the circumstances surrounding his interrogation.

Statements attributed to Brian Cochran or made by him came into evidence three times. Special Agent T.J. Jordan testified that he took a statement from Cochran in which Cochran implicated the defendant. Although the defendant did not object to that testimony, the trial court instructed the jury that that statement was not to be considered as evidence of guilt.

Polygraph examiner Malcomb Elrod testified that Cochran failed the polygraph examination. Cochran then stated that his wife told him about killing this individual. She also told him that she had described how she had shot him and where she had obtained the gun. The defendant did not object to this testimony.

Finally, Brian Cochran testified that his ex-wife, the defendant, told him she had a set of keys from a truck and that she needed to talk to him. She also told him someone had been shot. The defendant objected to Cochran's testimony, and he was not allowed to testify further. The trial court instructed the jury to disregard the testimony.

The testimony of Special Agent Jordan and polygraph examiner, Elrod, was clearly inadmissible. However, error may not be predicated upon a ruling admitting evidence unless a substantial right of a party was affected and unless a timely objection was made. Rule 103(a), Tenn. R. Evid. No objection was made by the defendant to this testimony. Furthermore, the evidence was cumulative and even had it been admitted over the objection of the defendant, then the error would have been harmless.

The testimony of Brian Cochran at the trial was not incriminating to the defendant, and, therefore, it did not affect a substantial right of the defendant. Furthermore, the trial court instructed the jury to disregard the evidence.

This issue is without merit.

<u>Elisa Cochran</u>, 1998 WL 783343, at *7.

In our view, this Court on direct appeal effectively ruled that any error pertaining to these issues was harmless. Therefore, the Petitioner has failed to satisfy the second prong of <u>Strickland</u>, that any ineffective performance by counsel prejudiced the defense, resulting in a failure to produce a reliable result. <u>Strickland</u>, 466 U.S. at 687. The Petitioner's claim that her trial counsel was ineffective for failing to object to certain portions of the testimony of Special Agent T. J. Jordan of the TBI, polygraph examiner Malcomb Elrod, and the Petitioner's former husband, Brian Cochran, is without merit.

With regard to Petitioner's claim that her trial attorney was ineffective because he failed to request a mental evaluation for her, the post-conviction court stated the following:

> it all comes down to whether he was ineffective for failure to ask for a mental evaluation. I've complained for years about lawyers coming in here in every case wanting a mental evaluation and I've made them state objective reasons, things that they've seen or feel from conversations or things they have found in an investigation of one's background that would require a mental evaluation, and in this particular case, it makes no difference to me whether she told him or didn't tell him about this prior admission, which I think had to do with some sort of drug problem, I don't think that was enough of a red flag in my mind to require him to ask for a mental evaluation, or even the fact that he knew that someone in the family suffered from that particular infliction [sic]. She was able to communicate with him and he was able to communicate with her.

After a <u>de novo</u> review, we conclude that the post-conviction court's determination that counsel's performance was not deficient concerning this issue is proper. This issue is also without merit.

Accordingly, we AFFIRM the judgment of the post-conviction court.

_____

ROBERT W. WEDEMEYER, JUDGE