IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Returned to Active Status February 3, 2003

## ROGER HARRIS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Unicoi County**
**No. 4280     Lynn W. Brown, Judge**

_____

**No. E2001-00782-CCA-R3-PC**
**September 22, 2003**
_____

This case has been returned to active status for consideration of the post conviction issues, after the supreme court denied the petitioner's delayed appeal under Tennessee Supreme Court Rule. 28 § (9)(D).  The petitioner appeals from the denial of his petition for post-conviction relief.  The petitioner contends he received ineffective assistance of counsel at trial and on appeal.  We affirm the post-conviction court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Kenneth F. Irvine, Jr., Knoxville, Tennessee, for the appellant, Roger Harris.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Kenneth C. Baldwin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, Roger Harris, was convicted of first degree murder and reckless endangerment with a deadly weapon.  His convictions were affirmed on direct appeal.  See State v. Roger Dale Harris, No. 03C01-9201-CR-19, LEXIS 618 (Tenn. Crim. App. July 23, 1992, at Knoxville). On March 15, 1995, the petitioner filed a pro se petition for post-conviction relief and was appointed counsel, who amended the petition.  The petitioner contends that the trial court erred in denying his petition for post-conviction relief and that he received ineffective assistance of counsel.

On December 21, 1990, the petitioner's girlfriend left him and moved in with the victim, Jeff

Higgins. The petitioner spent that night and the next day drinking, consuming drugs, making threats against the victim, and shooting at his own home, injuring one of his friends in the process. At approximately eight o'clock in the evening, the petitioner went to the victim's home and killed him.

On August 19, 1996, the State filed an answer and motion to dismiss the petitioner's request for post-conviction relief. On September 22, 1997, after several continuances, the defendant's family retained a private attorney who filed an entry of appearance in the case. The trial court ordered the petitioner's family to pay $500 to the public defender's office before allowing substitution of counsel. The petitioner then filed an interlocutory appeal, pursuant to Tennessee Rules of Appellate Procedure 10. This Court reversed the order and remanded for substitution of private counsel, without the payment of $500. See Roger Harris v. State, No. 03C01-9712-CR-00516, LEXIS 67 (Tenn. Crim. App. Jan. 28, 1999, at Knoxville).

Following the substitution of counsel, the petitioner's trial counsel filed an amended petition for post-conviction relief on August 19, 1999, alleging that the petitioner received ineffective assistance of counsel at trial and on appeal. Before the State responded to the petitioner's allegations, the trial court entered an order dismissing the petitioner's request for post-conviction relief for failure to verify the petition by oath or affirmation. Again, the petitioner appealed the judgment of the trial court, and this Court reversed the dismissal of the petitioner's request for relief. See Roger Harris v. State, No. E1999-02056-CCA-R3-PC, LEXIS 579 (Tenn. Crim. App. July 28, 2000, at Knoxville).

On January 5, 2001, following this Court's remand, the State filed an answer to the aforementioned petition. The trial court made its findings of fact and conclusions of law and denied the defendant post-conviction relief. The petitioner appealed and this Court granted him a delayed appeal to the supreme court, staying consideration of the case pending the delayed appeal. The supreme court denied the delayed appeal and the case is now before this Court for decision. See State v. Roger Dale Harris, No. E1992-00014-SC-R11-CD, LEXIS 81 (Tenn., Feb. 3, 2003, at Knoxville).

The testimony at the post-conviction hearing consisted of the petitioner, the petitioner's trial counsel, Robert Harris, Deborah Simmons, and Kent Garland.

The petitioner testified that he was represented by the same trial counsel at his preliminary hearing, at trial, and on appeal. He said he asked his lawyer to file a motion for him to be released on bail, but his lawyer failed to do so. The State showed the petitioner an exhibit, which was a motion for the court to set bail for the petitioner prepared by the petitioner's trial counsel. The petitioner admitted that the motion was filed in his case by his trial counsel, but said he was not told why his motion was denied. He said he asked his attorney to appeal the trial court's decision denying him bond, and his attorney said the trial court denied his appeal. He said he wanted to be released from jail so he could work to help his family pay for his defense. He also said that being released from jail would have made it more convenient to meet with his attorney. He said that he never had the opportunity to meet his attorney in private and that they only met four times for five

to fifteen minutes per meeting. He said that his attorney failed to show him any police reports, autopsy reports, lab reports, or photographs from the crime scene and that his attorney told him that he had talked with many witnesses and had done a thorough investigation. He said that he and his attorney did not discuss the hiring of any experts in his case and that his attorney told him that he had his own private investigator. He said that even though he gave his attorney the names of several potential witnesses, his attorney failed to interview any of them and the petitioner was the only defense witness. He said his attorney told him that nobody wanted to get involved in his case and testify on his behalf.

The petitioner said that the word "intentionally" had been added to his indictment without his knowledge. He said his attorney told him that he planned to represent him before the Tennessee Supreme Court and never indicated that he did not plan to go forward on the petitioner's behalf. He said he told his attorney that he knew one of the jurors and that his attorney assured him "it'll be alright." He said that when asked, the juror denied knowing the petitioner.

On cross-examination, the petitioner testified that he went to school with the juror and that she was a friend of the victim. He said he told his attorney that the juror was a friend of the victim, and his attorney responded with, "I've got that."

The petitioner testified that every time he confronted his attorney about evidence and other things, his attorney would tell him that "your family has retained me, Mr. Harris, I've got this." He said that he wanted to see the search warrant and other documents, but his attorney did not give him a copy. He said that his attorney allowed law enforcement officers and jailers to stand within earshot of them during their meetings. He said he thought some of the jailers had "snitches," because the District Attorney said that inmates had claimed that he planned to plead temporary insanity. He said that no informants testified before the court.

On redirect, the petitioner testified that the longest meeting he had with his trial counsel lasted twenty minutes and that his family retained counsel for him because he was unable to financially do so himself. He said that on several occasions, his trial counsel failed to bring the petitioner's file or a notebook to their meetings.

Robert L. Harris, brother of the petitioner, testified that he was not on the scene when the victim was shot. He said that on the night of the incident, he was called to come to the scene to get the petitioner out from under the trailer. He said that he called to his brother, who came out from under the trailer and was handcuffed by police. He said that he was not interviewed by the petitioner's attorney and would have been able to remember more details if he had been interviewed back in 1990 or 1991. He said he did not testify at the petitioner's trial. On cross-examination, he testified that he had little contact with the petitioner after he was taken into custody. He said he did not contact the petitioner's attorney to tell him that he wished to testify nor did he attend the trial. He said that he would have been at his brother's trial if he had been subpoenaed even though, due to his own criminal record, he was advised by his own attorney not to attend.

Deborah Simmons, the petitioner's sister, testified that she was at her mother's home when she learned of the incident involving the petitioner. She said Investigator Don Whitson told her that her brother shot the victim and that all of the witnesses stated that the petitioner was drunk and "out of his mind." She said that she was involved in obtaining counsel for the petitioner and paid a portion of his fees. She said the petitioner's attorney did not ask her what she knew about the case. She said that she did not think about telling him about her conversation with Investigator Whitson until she heard him testify in court that the petitioner was "straight" and "knew what was going on."

On cross-examination, Simmons testified that she asked Investigator Whitson if the petitioner had been drinking the night of the shooting because "if he was in his right mind he wouldn't have done something like that."

The petitioner's trial counsel testified that he has been an attorney for thirty-two years and that 95% of his practice consists of criminal work. He said that he was contacted by the petitioner's sister and was retained to represent the petitioner. He said he does not routinely give defendant's copies of motions nor does he remember the petitioner asking for copies of anything. He said he would not allow police officers to be within earshot of a conference with his client. He said that the provision for attorney/client conferences "weren't the best in the world" and that he would be mindful of security during any conversation with his client. He said that he did not remember the number of times he met with the petitioner, but the gist of the meetings had to do more with mitigating the offense than with an absolute defense. He said that "without a doubt there was an extremely high level of intoxication involved in the entire incident." He said his strategy was "to reduce the case from first degree murder to second degree murder based on the level of intoxication, attacking the element of premeditation." He said the petitioner's girlfriend had a relationship with the victim and had stayed with the victim on the night before the incident. He said that during the course of the day of the incident, the petitioner searched for his girlfriend, made threats, and got intoxicated. He said that he did not have any recollection of the indictment being altered to include the word "intentionally." He said he was fairly confident that if he objected to the amendment, the "court probably wouldn't have granted the motion, and we'd wound up with a continuance, and the case would have been resubmitted to the Grand Jury." He said he did not recall telling the petitioner he would file a Rule 11 appeal to the Tennessee Supreme Court, but he would have filed it had he told the petitioner he would do so. He said he did not see any reason for a mental evaluation of the petitioner and could not recall whether he used his own private investigator. He said that if the petitioner had said he knew someone on the jury, he would have seen that the potential juror was excused. He said the only issue he presented to the Court of Criminal Appeals was that the trial court erred in giving the requested jury instructions regarding intoxication and premeditation.

On cross-examination, trial counsel testified that he was unable to locate the petitioner's file and that, due to the passage of time, his memory about the case was vague. He said there was no issue that would have merited securing an investigator, and he did not seek the help of any experts in the preparation of this case. He said he remembered talking to people who had seen the petitioner on the day of the incident. He said the trial court denied his request for bail, and he did not appeal its decision. He said he did not have any recollection about submitting motions in this case. He said

he performs his own mental evaluation and relies on his training in "representing hundreds or thousands of clients." He said the petitioner's mental state may or may not have been admissible evidence, but he was aware of the petitioner's long history of drug and alcohol abuse. He said he did not remember sending a letter advising the petitioner that he would be responsible for filing his own Rule 11 application. On redirect-examination, he said the State's case was based on the assumption that the petitioner began forming the intent to kill many hours before he met the victim at about eight o'clock on the day of the incident.

Kent Garland testified that he was the prosecutor in the petitioner's case. He said that the petitioner's trial counsel "took a miserable set of facts and circumstances as far as the evidence that he had" to deal with and "tried to wear us out with it in the trial process." He said the facts in the case were overwhelming and he "couldn't imagine what possible defense that there might be available" to the petitioner. He said there was evidence of the petitioner's consumption of alcohol and marijuana over a period of time, which was an issue in the case. He said that every witness testified that the defendant had been consuming alcohol and marijuana during the day of the shooting. He said that Steven Lewis had been with the defendant on the day of the shooting and had testified to the defendant's consumption of alcohol. Garland said the defendant had a "nine shot .22 pistol" in his possession prior to the shooting and had shot Lewis in the foot after firing it inside his own trailer. He said Lewis testified that the defendant hid under his trailer. He said that when an indictment includes an error within the wording of first degree murder, an amendment is made before an indictment is read to a jury, and a change in the wording of an indictment is done prior to the beginning of trial. He said that the petitioner's trial counsel did not object to the amendment. He said the State did not offer to exclude anyone from the jury, and the defense used seven peremptory challenges, while the court used eighteen challenges. On cross-examination, he said there was never a death penalty notice in this case. He said the petitioner's trial counsel filed two pre-trial motions.

## Analysis

### I. Ineffectiveness of Trial Counsel

The petitioner contends that the trial court erred in denying his petition for post-conviction relief. Further, he contends that he has presented sufficient evidence to receive a new trial and/or a new appeal. The petitioner claims he is entitled to post-conviction relief because he was denied effective assistance of counsel at trial and on appeal. The record reflects the trial court dismissed the defendant's post-conviction petition due to the petitioner's failure to prove that he suffered ineffective assistance of counsel. We, therefore, examine whether the petitioner received ineffective assistance of counsel.

The judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim App. 1983). The credibility of witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court and, on appeal, the burden is on the petitioner to prove that the evidence preponderates against the post-conviction court's findings. Henley, 960 S.W.2d

at 579.

To prevail on a claim of ineffective assistance of counsel, the petitioner bears the burden of proving that trial counsel's performance was deficient and that the deficiency prejudiced the petitioner. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). To establish that trial counsel performed deficiently, the petitioner must show that counsel's performance was below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The petitioner must also show that his trial counsel's performance prejudiced the defense, resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687,104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

When evaluating an ineffectiveness of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 690. In reviewing the claims of the petitioner, this Court "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689).

We may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Trial counsel may not be deemed ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276 (Tenn. Crim. App. 1980).

The petitioner contends that he received ineffective assistance of counsel for the following reasons:

(1) Trial counsel failed to file a proper motion for bond;
(2) Trial counsel failed to file a motion to reconsider the denial of bond;
(3) Trial counsel failed to seek review of the trial court's denial of bond with this Court, pursuant to T.R.A.P. 8;
(4) Trial counsel failed to properly consult with the petitioner in preparation for trial;
(5) Trial counsel failed to provide the petitioner with copies of documents he requested during the preparation for trial;
(6) Trial counsel failed to maintain confidentiality with the petitioner during his meetings;
(7) Trial counsel failed to file proper pre-trial motions;
(8) Trial counsel failed to interview crucial witnesses;
(9) Trial counsel failed to call crucial witnesses in support of his defense theory;
(10) Trial counsel failed to object to an unconstitutional amendment of the indictment;
(11) Trial counsel failed to employ expert assistance; and

(12) Trial counsel failed to understand the State's proof.

**Issues (1), (2), (3), (7)**

The petitioner contends in issues (1), (2), and (3), that his trial counsel failed to file motions regarding bond. The petitioner is not as specific in issue (7), as he later argues that his trial counsel failed in filing proper pretrial motions. He contends that his trial counsel should have filed a proper motion for bond. Also, he contends that, after the trial court denied his motion for bond, his trial counsel was deficient in failing to file a motion to reconsider the denial and later failing to seek review of the trial court's denial of bond with this Court.

There exists a constitutional right to bail in non-capital cases. See Tenn. Const. art. I, § 15; State ex rel Hemby v. O'Steen, 559 S.W.2d 340, 341 (Tenn. Crim. App. 1977). This was never a capital case because the State never sought the death penalty. The State concedes that the defendant was entitled to bail and that the petitioner's trial counsel erroneously failed to seek review of the denial of bail. The petitioner contends that, had he been released on bond, he would have been better able to confer with his attorney and helped in the preparation of his defense. However, the defendant failed to show that he was prejudiced by this and has not established how this would have affected the outcome of his trial. The post-conviction court found "there's nothing in the record that indicates that had he been released on bond any other evidence would have been produced, that the trial would have been in any way different." The petitioner fails to specify what pretrial motions, other than the aforementioned, his trial counsel was deficient in filing. Therefore, we can only conclude as to issues (1), (2),(3), and (7) that the petitioner has failed to show how he was prejudiced by his trial counsel's performance.

**Issues (4), (5), (6), (12)**

The petitioner alleges that his counsel did not consult with him in preparation for trial and failed to provide him with copies of documentation that he requested during the preparation of his case. The petitioner argues that because his trial counsel did not consult with him and failed to conduct a proper investigation, he did not fully understand the petitioner's case.

Trial counsel testified that he would not refuse a client the right to obtain copies of any documents if a client wanted them. The petitioner also alleges that his trial counsel failed to maintain confidentiality with the petitioner during his meetings. Because the petitioner testified that he did not have a memory of the offense due to his alleged intoxication, the post-conviction court found that "he didn't have much information to convey to counsel not having any memory" of the incident. Testimony reveals that the petitioner's trial counsel met with him on several occasions and under the best of circumstances provided in a confinement situation. Trial counsel conceded that the Unicoi County Jail attorney/client facilities were not optimal for meetings but testified that he would not allow officers or inmates to be within earshot of a meeting. The petitioner failed to present any evidence that he was prejudiced by his trial counsel's failure to provide him with any documentation or records. Furthermore, the petitioner failed to present testimony by fellow inmates or guards that

could have demonstrated how he was prejudiced by meeting with his trial counsel in confinement. Lastly, the petitioner has failed to demonstrate how his trial counsel failed to understand his case. This issue is without merit.

**Issues (8), (9), (11)**

The petitioner contends that his trial counsel failed to interview crucial witnesses and to call such witnesses in support of his defense theory. He alleges that his trial counsel failed to present two crucial witnesses at trial: his brother, Robert Harris; and his sister, Deborah Simmons. He alleges there was no proof presented at the evidentiary hearing which established that his trial counsel considered these witnesses and then, because of bias, decided not to use them. Moreover, he contends that many of the State's witnesses were friends or family of the victim and were not ignored because of their possible bias. The petitioner's brother and sister testified at the evidentiary hearing, and the trial court found that his brother's testimony "would have been relevant at trial" but would have been "subject to attack on – on issue of bias." The post-conviction court found that the "petitioner has not proven that failure to call Robert Harris constitutes ineffectiveness of counsel." The post-conviction court found that Deborah Simmons

> heard an investigator in the sheriff's department, Mr. Don Whitson, make a statement immediately afterwards which she says was contrary to his testimony on the stand. That he made the statement immediately after the killing that Roger was drunk, messed up, out his mind, and testified on the witness stand that he was straight.

However, the post-conviction court stated that "the strange thing about it is the only way that this would have come out would have been for her to be in the courtroom, and subject to the Rule of Exclusion. If she stayed in the courtroom she couldn't have testified." The post-conviction court found that the petitioner's trial counsel was not ineffective for failing to interview her or that failure to do so amounted to prejudice in the case. The post-conviction court stated that there existed overwhelming proof that the petitioner was "not of an alcoholic haze," but was capable of functioning and forming the requisite mens rea to commit the present offense. Therefore, we conclude that the record supports the findings of the post-conviction court and this issue is without merit.

The petitioner also argues that his trial counsel failed to obtain experts, specifically a mental health expert or a private investigator, to aid in his defense. The post-conviction court found that although the petitioner's trial counsel did not have him evaluated by a mental health expert, there is

> no proof that he has any, or at the time was suffering from mental disease or defect which would have either rendered incompetent, not knowing what was going on in the proceedings, or unable to assist counsel; and there's just nothing in the record that he has a mental disease or defect that would have diminished his ability to either act intentionally with cool purpose or premeditate.

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's

negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Black, 794 S.W.2d at 757. It is of the utmost importance that the witnesses testify and the petitioner offer evidence at the evidentiary hearing in order for the trial court to determine the potential merit of the evidence. Id. The petitioner did not present any testimony from a mental health expert or a private investigator at the evidentiary hearing; thus, the petitioner has failed to show that he was prejudiced from such deficiency.

**Issue (10)**

The petitioner contends that his trial counsel failed to object to an unconstitutional amendment of the indictment. Prior to the amendment, the indictment charged that the defendant "did unlawfully, deliberately and with premeditation kill Jeff Higgins in violation of Section 39-13-202, Tennessee Code Annotated and against the peace and dignity of the State of Tennessee." The petitioner alleges that the word "intentional" was improperly added to his indictment and that his trial counsel failed to object to the amendment of the word. The post-conviction court stated that the petitioner's trial counsel testified that "he did not object to the amendment" and that the indictment was amended before the trial began, with the consent of the defendant. Trial counsel testified that he agreed to the amendment because he knew that if he did not do so, the indictment would not be amended and the case would be continued. Trial counsel also stated that if the case was continued, he was certain the Grand Jury would return an indictment with the word "intentionally" inserted. The post-conviction court ruled that the trial counsel's decision not to object to the amendment did not constitute ineffective assistance of counsel. Tennessee Rule of Criminal Procedure 7(b) permits the amendment of an indictment in all cases with the defendant's consent before jeopardy attaches, if no additional or different offense is charged and no substantial rights of the defendant are prejudiced. Additionally, we note that an indictment is valid if it provides sufficient information to enable the accused to know the accusation to be answered, to furnish the court with an adequate basis for proper entry of judgment, and to protect the accused from double jeopardy. State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). We will not use the benefit of hindsight to second-guess trial strategy by counsel and criticize trial counsel's tactical decision. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In light of the overwhelming evidence against the petitioner, he has failed to demonstrate prejudice caused by the wording of the indictment. We conclude the post-conviction court did not err in finding that the petitioner received the effective assistance of counsel.

## II. Ineffectiveness of Appellate Counsel

The petitioner was represented by the same counsel at trial and on subsequent appeals. He contends that he received ineffective assistance of appellate counsel.

It is counsel's responsibility to determine the issues to present on appeal. State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986). This responsibility addresses itself to the professional judgment and sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn.

1995). There is no constitutional requirement that every conceivable issue be raised on appeal. <u>Campbell v. State</u>, 904 S.W.2d 594, 597 (Tenn. 1995). The determination of which issues to raise is a tactical or strategic choice. <u>Id.</u>

**Issue (1)**

The petitioner contends that his appellate counsel was ineffective for failing to file the decision of <u>State v. Brown</u>, 836 S.W.2d 530 (Tenn. 1992), as supplemental authority while his direct appeal was still pending before this Court. In <u>Brown</u>, decided over seven weeks before this Court's decision in the petitioner's case, the supreme court concluded that juries should not be instructed that deliberation can be formed in an instant. <u>Id</u>. At 543. The petitioner argues that the jury instructions given in his case violated <u>Brown</u>, because they informed the jury that premeditation and deliberation could be formed in an instant. He contends that his counsel should have brought this to the attention of this Court. However, this Court concluded that the jury instructions on premeditation and deliberation were proper, even under the new decision of <u>Brown</u>. <u>See</u> <u>State v. Roger Dale Harris</u>, No. 03C01-9201-CR-19, LEXIS 618 (Tenn. Crim. App. July 23, 1992, at Knoxville). The post-conviction court stated that "the proof in the case was overwhelming that Mr. Harris had been considering killing Mr. Higgins for some period of time; and actually, and strangely, made an appointment to do so at 8 o'clock; said he was going to do that." The petitioner argues that his counsel's failure to file a petition to rehear should result in a reversal of this Court's earlier decision. The petitioner alleges that this Court did not fully address the jury instructions in its earlier review of this case, as it did not properly consider <u>Brown</u> because this Court's opinion stopped one sentence short of the sentence that offends the supreme court's analysis in <u>Brown</u>.

First, we note that in his application for permission to appeal to the Tennessee Supreme Court pursuant to his delayed appeal, the petitioner raised as his only issue this court's ruling regarding the jury instruction. As previously noted, the court denied his application. Obviously, our supreme court did not believe that the petitioner was entitled to relief. In any event, we agree with the trial court that the evidence regarding his threats against and his planning to kill the victim were strong. The record does not indicate in any fashion that the jury could have hinged its finding of guilt upon the trial court's instruction that premeditation and deliberation could be formed in an instant. We conclude that this issue is without merit.

**III. Additional Constitutional Violations**

The petitioner contends that he was unconstitutionally denied bond in this case and that he was also denied his constitutional right to have a grand jury review the charge against him. He contends that the improper amendment of the indictment during the actual trial was a constitutional deprivation of this right. He alleges that the trial court failed to address the petitioner on the record, and a silent record does not indicate a waiver. We have addressed the issue of bond, the amended indictment, and the overall issue of ineffectiveness of counsel in the above analysis. The petitioner does not present an argument that these issues entitle him to post-conviction relief. Therefore, we conclude that these issues are deemed waived on appeal. <u>See</u> Tenn. Ct. Crim. App. R. 10(b).

## Conclusion

For the aforementioned reasons, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE