Leroy **WILLIAMS**, Appellant,

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Jan. 3, 1980.

Permission to Appeal Denied by Supreme Court March 17, 1980.

Joe B. Jones, Danny T. Ferguson, Asst. Public Defenders, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Jack E. Seaman, Asst. Dist. Atty. Gen., Memphis, for appellee.

OPINION

DAUGHTREY, Judge.

In this post-conviction proceeding the petitioner contends that he was denied his constitutionally guaranteed right to the effective assistance of counsel at trial.

As previously summarized by this court in an opinion affirming Williams' conviction on direct appeal, the facts are relatively simple:

> The owners, Mr. and Mrs. Hollingsworth, and two of their customers were in Hollingsworth's Grocery Store on the night it was robbed at gunpoint. In an exchange of gunfire, Mr. Hollingsworth was critically wounded in the chest, and the appellant was wounded in the side. Williams fled on foot and was found lying on the ground in front of his automobile, which was parked some 8/10ths of a mile from the scene of the robbery.
>
> The appellant was identified from an array of photos by the two customers shortly after the robbery, and by one of the owners a few days before trial. There was no objection entered to testimony concerning the photo identifications, nor any request to inspect the photographs themselves. All four of the people who witnessed the robbery made in-court identifications of Williams, and, again, no objection was made to any of this testimony. By his failure to enter contemporaneous objections to the identifications or the procedures used in obtaining them, the appellant waived his right to attack this evidence on appeal. *Leroy Williams v. State of Tennessee*, Court of Criminal Appeals at Jackson, released January 17, 1978.

The petitioner was convicted by a jury of armed robbery and was sentenced to 50 years imprisonment. He now alleges his attorney acted incompetently (1) in failing to object to the identification testimony, as outlined above, and (2) in neglecting to properly investigate the case and interview the State's witnesses prior to trial.

At the hearing below, the defendant's trial attorney testified that he had con-

ferred with his client on some half-dozen occasions and had interviewed the only prospective defense witness whose name Williams had given him. It turned out that this person knew nothing relevant to his client's defense. Williams told his attorney he had not been involved in the robbery; he said that he was in Chicago at the time of the offense and alluded to an unnamed alibi witness. But, as the attorney testified, "frankly it wouldn't have made any difference if I did get the name because, as the proof showed, he [Williams] was found about eight-tenths . . . of a mile from the scene of the robbery . . . lying in front of his vehicle with a bullet wound." The attorney said Williams never mentioned to him a man named "Butch" who, according to Williams' post-conviction testimony, was the one who had actually shot him on the night of the robbery.

The trial attorney did interview one of the two investigating officers and he conferred with the Assistant District Attorney assigned to Williams' case. He was told by the prosecutor what witnesses the State expected to call and what their testimony would be, and he was shown weapons, casings and photographs of the scene which were later introduced into evidence. He also recalled being shown a group of mugshots that had been displayed to the eyewitnesses and from which a photograph of his client had been chosen by at least two people as representing the robber. He said that he saw nothing about the group of photographs to indicate that it was unduly suggestive or otherwise improper.

Finally, the attorney testified that for two reasons he decided not to object to testimony concerning the pretrial identification of his client once it became clear that the State was not going to offer to introduce the group of photographs into evidence. First, he wanted to argue to the jury that the identification procedure must have been improper and the photo display tainted, or else the State would have been willing to let the jury see the photographs. Second, in the event of conviction, he hoped to assign error on the basis of the prosecution's failure to introduce the mug shots

into evidence. He also testified that he had raised the question of suggestiveness in photograph identification at previous trials, without success, and that he wished to try a "new approach." The record of the trial indicates that while the trial attorney made no motion to exclude the identification evidence, he broadly and rigorously attacked it on cross examination, albeit without notable success.

The trial court found that Williams' attorney adequately investigated his client's case prior to trial and noted that he had been provided "full discovery." The trial judge further concluded that

> . . . the Petitioner was not denied effective assistance of counsel before, during or after the trial. The fact that counsel has had many criminal trials before this Bar and his assertion that he was satisfied from the evidence shown to him by the State and the statements of witnesses concerning the identification coupled with counsel strategy of using the failure of the State to introduce the photographs shown to witnesses for his argument and appeal, convinces this Court of the correctness of this finding. The Court further notes the transcript, marked Exhibit # 1, thoroughly cross-examined eye witnesses in regard to their identification. . . . [sic]. Further, this Court viewed the mug photographs in question upon this hearing and do not find on their face to be tainted [sic].

In response to these findings and conclusions, the defendant argues that his attorney's conduct cannot be attributed to permissible "trial strategy" because the lawyer lacked sufficient knowledge of the facts and circumstances surrounding the identification to make an informed decision, citing *People v. Corona*, 80 Cal.App.3d 684, 145 Cal.Rptr. 894 (1978). There the court said:

> The decision not to raise a defense, of course, may be fully justified on the bases [sic] that it was made deliberately as a matter of trial strategy or tactics. Such decision, whether wise or unwise, when viewed with benefit of hindsight, may not

be second-guessed or distrubed [sic] by the reviewing court. However, even the tactical and strategic determinations of trial counsel must have some rational support founded on reasonable, sound, legal principles and fully developed facts. Therefore, when trial counsel fails to acquire facts necessary to a crucial defense or to follow the facts already in his possession or to develop facts to which his attention is called or when he fails to do the requisite legal research to learn the applicable law, his failure to raise a defense or defenses which could have been established by making the aforestated requisite efforts cannot be justified by reference to trial strategy or tactics. 80 Cal.App.3d at 706, 145 Cal.Rptr. at 905.

We are convinced after a review of the record that the judge correctly denied relief in this case. Undoubtedly the defendant's attorney should have made an attempt to interview the eyewitnesses, rather than merely accept the prosecuting attorney's word for what their testimony would be. As the Commentary to the ABA Standards Relating to the Defense Function § 4.1 notes:

> The relationship of effective investigation by the lawyer to competent representation is patent, for without adequate investigation he is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial. . . . If they were eyewitnesses, he needs to know the conditions at the scene that may have affected their opportunity as well as their capacity for observation. The effectiveness of his advocacy is not to be measured solely by what the lawyer does in the trial; without careful preparation he cannot fulfill his role.

Thus the ABA Standard has been interpreted to mean that "in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible." *United States v. DeCoster*, 487 F.2d 1197, 1204 (D.C. Cir. 1973), quoted in *Baxter v. Rose*, 523 S.W.2d 930, 933 (Tenn.1975).

■ However, in view of the evidence in the record, including the circumstances in which the witnesses' observation of the robber occurred (length of confrontation, lighting, etc.), their pretrial identification of Williams, and the positive nature of their in-court identification, we further conclude that the attorney's omission had no effect on the outcome of the case, and we therefore hold that the defendant suffered no prejudice from what might otherwise have constituted a substantial violation of his rights. *United States v. DeCoster, supra,* 487 F.2d at 1204.

Finally, we hold that the defendant's trial lawyer, having had the benefit of full, informal discovery of the prosecution's case, was sufficiently informed of the facts of the case to make a valid tactical decision about the advisability of foregoing objection to the pretrial identification testimony. See *Whitney v. United States,* 513 F.2d 326, 328–9 (8th Cir. 1974), holding that if "counsel's failure to act was a deliberate bypass of a known right," it will constitute a waiver, and that "[e]ven if counsel's choice of strategy subsequently backfires, the waiver is binding . . . in all but the most exceptional circumstances," citing *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

As one member of this Court has observed:

> No two lawyers will make the same tactical decisions; each will utilize his own traits of personality, knowledge, and experience to convince the jury. . . . *Baxter v. Rose* does not require a perfect lawyer; there are no perfect lawyers. The *Baxter* case requires only that an attorney's services be "within the range of competency demanded of attorneys in criminal cases." This range of competency is broad in matters of strategy and tactics. *State of Tennessee v. William Ray Hellard*, Court of Criminal Appeals at Knoxville, released November 14, 1979 (Tatum, J., dissenting).

■ This court has previously held that "[n]ot every mistake of judgment or mis-

conception of law made by defense counsel will deprive the accused of his constitutional right to effective representation [citations omitted] nor is the accused deprived of such right because a different procedure or strategy might have produced a different result." *Long v. State*, 510 S.W.2d 83, 88 (Tenn.Cr.App.1974). Thus, the fact that the defense attorney's "fall-back" strategy was legally faulty, *i. e.* the appellate courts generally will not reverse for evidentiary flaws in the absence of a timely objection at trial, is not controlling here. Moreover, we have reviewed the photographs in question, and we fail to find suggestiveness of such a nature as to have precluded their introduction at trial. It follows that an objection by the attorney would have been futile and that his failure to enter an objection had no effect whatever on the outcome of the trial.

While we cannot and do not approve of the trial attorney's failure to interview the eyewitnesses in this case, we conclude that the evidence in the record does not preponderate against the trial judge's determination that the representation afforded Williams by his trial attorney was "within the range of competency demanded of attorneys in criminal cases," *Baxter v. Rose, supra,* 523 S.W.2d at 936. We therefore affirm the judgment of the trial court.

WALKER, P. J., and TATUM, J., concur.