## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

### FEBRUARY 1998 SESSION



FILED

**April 21, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **ROBERT L. HOWELL,** | ) | |
| Appellant, | ) | **C.C.A. NO. 02C01-9705-CR-00194** |
| | ) | |
| VS. | ) | **SHELBY COUNTY** |
| | ) | |
| **STATE OF TENNESSEE,** | ) | **HON. BERNIE WEINMAN,** |
| | ) | **JUDGE** |
| Appellee. | ) | |
| | ) | (Post-conviction) |

FOR THE APPELLANT:      FOR THE APPELLEE:

**WILLIAM L. JOHNSON**
50 North Front St.
Suite 1150
Memphis, TN 38103

**JOHN KNOX WALKUP**
Attorney General & Reporter

**CLINTON J. MORGAN**
Counsel for the State
425 Fifth Ave., North
Cordell Hull Bldg., Second Fl.
Nashville, TN 37243-0493

**JOHN W. PIEROTTI**
District Attorney General

**GLEN BAITY**
Asst. District Attorney General
201 Poplar St., Suite 301
Memphis, TN 38103

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

**O P I N I O N**

Following a jury trial, the petitioner was convicted on October 22, 1992, of felony murder. This Court affirmed his conviction on October 13, 1993, and the Supreme Court denied his application to appeal on March 7, 1994.[1] On April 11, 1996, the petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel. After a hearing on November 15, 1996, the trial court dismissed the petition. The petitioner now appeals and argues that his petition should not have been dismissed. After a review of the record and applicable law, we affirm the judgment of the court below.

We will briefly recite the facts surrounding the petitioner's conviction. The petitioner and his wife, Rose Howell, were estranged and Howell had been living with the victim, Christopher Garlock. Evidence at trial revealed that the petitioner shot the victim and took his wallet. The petitioner was convicted of felony murder and was sentenced to life imprisonment.

In this post-conviction proceeding, the petitioner makes several allegations of ineffective assistance against his trial counsel, Joseph Patterson. He alleges that Patterson failed to interview alibi witnesses, failed to fully investigate his case, failed to prepare an alibi defense, failed to fully prepare for trial, failed to suppress two of the petitioner's confessions, and failed to fully explain the petitioner's right not to testify at trial.

At the post-conviction hearing, the petitioner testified that Patterson had been appointed to represent him. He alleged that Patterson failed to interview Jerry

---

[1] State v. Robert L. Howell, No. 02C01-9211-CR-00249, Shelby County (Tenn. Crim. App. filed Oct. 13, 1993, at Jackson)(perm. to app. denied March 7, 1994).

2

Hudspeth, the petitioner's uncle, about an alibi defense. He testified that Patterson told him Hudspeth would not make a good witness because Hudspeth was an alcoholic. On cross-examination, the petitioner admitted that Hudspeth had made a statement to the police in which he said the petitioner had admitted killing the victim.

The petitioner next testified that Patterson had not fully investigated his case. He alleged that Patterson had failed to talk to Rose Howell, the petitioner's wife. He testified that had Patterson talked to Rose Howell, she could have told him where the victim had been on the night he was killed. However, when questioned further, the petitioner later admitted that he did believe Patterson had spoken to Rose Howell but that he did not know the result of that conversation.

The petitioner further testified that Patterson had not listened to him. He stated that his case "just [ ] wasn't investigated." He asserted that Patterson had failed to have ballistic tests performed on the bullet that killed the victim. He further asserted that Patterson had failed to have the victim's wallet tested for fingerprints.

The petitioner next asserted that he had known one of the jurors on the jury panel that ultimately found him guilty. He said it had not been until after the trial that he had informed Patterson of this. He testified that he had not realized he had known the juror while at trial because the two had only worked together a short time.

The petitioner also complained that Patterson failed to get his two confessions suppressed. He testified that the confessions had been illegally coerced from him. However, he admitted that Patterson had filed a motion to suppress these confessions and that a hearing on the motion had been held. The trial court

3

subsequently denied the motion.

Patterson, a former Shelby County prosecutor and later public defender, testified that he had spoken with the petitioner on many occasions prior to trial. He stated, "We talked considerably, went over the evidence, went over the proof, talked, what I call trial strategy, over a period of several months." He testified that during his representation of the petitioner he had kept a log of his activities. He testified that he had spent thirty and a half hours in court and eighty-four hours out of court.

Patterson testified that he specifically remembered speaking to Hudspeth, the petitioner's uncle. He said he had spoken with him two or three times and that Hudspeth had had a drinking problem. He further testified that he and Hudspeth had discussed an alibi defense and that he had also discussed the defense with a girlfriend of the petitioner. However, he had determined that the alibi defense was not a "proper defense in the case." Patterson said he had been aware of Hudspeth's statement to the police and had shown the petitioner a copy of the statement.

Patterson further testified that an investigator had been assigned to this case. He said his notes reflected that the investigator had talked to several people who were familiar with the situation between the petitioner and the victim. He testified that these people had all told the investigator that the petitioner had made several threats against the victim. Patterson also said that he had talked to the petitioner's wife, Rose Howell, and had determined that she could add no favorable testimony.

As to the ballistic tests, Patterson testified that they were not performed because there had been no gun with which to match the bullet. As to fingerprinting,

4

Patterson testified that he had not had the wallet tested because he "didn't want to turn up more evidence that would incriminate [his] client . . . ." Also, the petitioner had told the police that he had the victim's wallet and that with the money from the wallet he had purchased some beer and clothing.

Patterson further testified that the petitioner had told him that he knew a member of the jury, but had not done so until after the trial. As to the petitioner testifying, Patterson said he could not remember the exact details surrounding the petitioner's decision not to take the stand. However, Patterson did voir dire the petitioner outside the presence of the jury to make sure he understood his right not to testify.

In post-conviction relief proceedings the petitioner has the burden of proving the allegations in his [or her] petition by a preponderance of the evidence." McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). Furthermore, the factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

This Court should not second-guess trial counsel's tactical and strategic choices unless those choices were uninformed because of inadequate preparation, Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980).

In reviewing the petitioner's Sixth Amendment claim of ineffective assistance of counsel, this Court must determine whether the advice given or services

rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that but for counsel's error the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).

In this case, the post-conviction court found that Patterson had spoken to witnesses about a possible alibi defense and had concluded that this would not be a viable defense for the petitioner. The post-conviction judge stated that such a determination was a tactical decision. The judge further concluded that Patterson had interviewed all potential witnesses and had spent a considerable amount of time on the case.

As to the petitioner's confessions to the police, Patterson had done what he could. The court found that a motion to suppress the statements had been filed in a timely manner. This motion was simply denied by the trial court. The post-conviction court also found that the ballistic tests were not performed because no gun was ever found and that fingerprint tests were not performed out of fear the tests would produce more evidence against the petitioner.

The post-conviction judge concluded, "The Court finds that Mr. Patterson and the Public Defender Staff thoroughly investigated the case, interviewed all the witnesses whose names were given them by the [petitioner] and talked with all of the State's witnesses. . . . The Court finds that the advice given and services rendered by

6

the [petitioner's] counsel was within the range of competency demanded by an attorney in a criminal case and that Mr. Patterson's representation of the [petitioner] at his trial complied with the requirements set out by the Supreme Court of Tennessee in Baxter v. Rose, 523 S.W.2d 930."

The record fully supports the findings of the post-conviction court. The petitioner has failed to carry his burden of proving his allegations by a preponderance of the evidence. Furthermore, the evidence presented at the post-conviction hearing does not in any way preponderate against the judgment of the court below. The petitioner clearly did not receive ineffective assistance of counsel and thus we affirm the dismissal of this petition.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOSEPH B. JONES, Judge


_____
THOMAS T. WOODALL, Judge

7