## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

FILED

April 21, 1999

Cecil W. Crowson
Appellate Court Clerk

### AT NASHVILLE

### JANUARY SESSION, 1999

| | | |
|---|---|---|
| **MAJOR RICHARDSON, JR.,** | ) | **C.C.A. NO. 01C01-9803-CR-00111** |
| | ) | |
| Appellant, | ) | |
| | ) | **DAVIDSON COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. STEVE R. DOZIER, JUDGE** |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee. | ) | **(POST-CONVICTION)** |

FOR THE APPELLANT:         FOR THE APPELLEE:

**THOMAS H. MILLER**
P.O. Box 681662
Franklin, TN 37068-1662

**JOHN KNOX WALKUP**
Attorney General & Reporter

**CLINTON J. MORGAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**VICTOR S. JOHNSON, III**
District Attorney General

**PATTY S. RAMSEY**
Assistant District Attorney General
Washington Square, Suite 500
222 2nd Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

Major Richardson, Jr., the Petitioner, appeals from the order dismissing his petition for post-conviction relief. Petitioner was convicted of aggravated robbery on June 26, 1992, and his conviction was affirmed on appeal by a panel of this court. State v. Major Richardson, Jr., No. 01C01-9301-CR-00016, Davidson County (Tenn. Crim. App., at Nashville, August 19, 1993). In his petition for post-conviction relief, Petitioner alleges that he received ineffective assistance of counsel at trial. We affirm the trial court's judgment.

While the new Post-Conviction Procedure Act went into effect as of May 10, 1995, its authority only extends to petitions filed after that date. Tenn. Code Ann. § 40-30-201 et seq. At the time Petitioner's post-conviction petition was filed on July 12, 1994, the burden of proving the allegations raised in the petition by a preponderance of the evidence was the Petitioner's. Clenny v. State, 576 S.W.2d 12 (Tenn. Crim. App. 1978), cert. denied, 441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979); McGee v. State, 739 S.W.2d 789 (Tenn. Crim. App. 1987).Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 595-96 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

In reviewing Petitioner's Sixth Amendment claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of all attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on

a claim of ineffective counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that but for counsel's error the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694, 104 S.Ct. 2052, 2064, 2067-68, 80 L.Ed.2d 674 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1995).

This court should not second-guess trial counsel's tactical and strategic choices unless those choices were uninformed because of inadequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980).

Petitioner's trial counsel was a Metro Public Defender assigned to represent the Petitioner from September 1991 through May 1992 when his trial was held. Counsel testified that she met with Petitioner for the first time on September 29, 1991. She later met with him on at least eleven (11) occasions for a total of 5.1 hours. Her co-counsel was her supervisor, who was the senior trial lawyer in the Public Defender's Office. Prior to trial, counsel filed various motions in limine and a motion to suppress the identifications of the Petitioner. Counsel conducted discovery, including looking at evidence in the police property room. Primarily, counsel determined the defense theory for trial as a case of mistaken identification.

In preparation for trial, they focused on inconsistencies between the witnesses' descriptions of the robber to the police and the Petitioner's actual appearance. Trial counsel and her assistants also interviewed many of the State and defense witnesses prior to trial. In addition, she set up a chart for trial documenting State's witnesses' descriptions of the suspect to the police in comparison to the true appearance of the Petitioner.

The inconsistencies in the description of the suspect versus the appearance of the Petitioner centered upon the fact that Petitioner had a tattoo in the center of his chest. In spite of counsel's efforts to find someone prior to trial who could document that Petitioner did have a tattoo at the time of the robbery, she was unable to identify anyone who could verify that fact. They discussed the possibility of the Petitioner exhibiting his tattoo at trial, but debated whether that would waive his rights regarding testimony and impeachment by his prior convictions. However, during the trial counsel did discover a photograph taken of the Petitioner at the Health Department after he was arrested which exhibited his tattoo. This photograph was presented as evidence at trial.

During the trial, counsel recalled that some prejudicial testimony was given against the Petitioner, but her strategy was to "just let it go," because she did not want to focus upon it and allow it to "stick in the jury's mind." Prior to the trial date, counsel and her assistants discussed with Petitioner the pros and cons of his testifying. Trial counsel advised him that if he did testify then his prior record, including several convictions for felony crimes involving dishonesty, would be used to impeach his testimony and that he would not make a good witness.

Counsel's supervisor testified that she served as co-counsel in the Petitioner's case. While her supervisor did not participate in the questioning at the hearing on the motion to suppress, she believed that it was a thorough hearing with counsel receiving information which assisted her in preparing for cross-examination at trial. The major topics in the identification issue revolved around the inconsistencies in the State's witnesses' testimony. The supervisor recalled that the Petitioner's tattoo was particularly central to the identification issue, with an investigator for the Public Defender's Office assisting counsel in attempting to locate family members or other witnesses who could verify that Petitioner had the tattoo at the time of the robbery. She recalled that a photograph was found late in the trial which demonstrated the large tattoo that Petitioner had on his chest and it was admitted at trial as evidence.

The supervisor accompanied counsel to the scene of the robbery during their preparation for trial. She also assisted counsel in preparing jury instructions and various motions. They discussed the decision of whether Petitioner should testify with the Petitioner, advising him of all the implications based upon his substantial prior record. The supervisor stated that she believed that "we prepared the case and that we thoroughly investigated the case and presented the best that anyone could to the jury and they made their decision."

Petitioner testified that prior to trial he met with his trial counsel "periodically." He did not recall seeing counsel's supervisor until "almost the day of the trial." Petitioner had been advised by counsel that identification was the big issue in his case. At the time of his arrest, Petitioner stated that he did have two (2) tattoos on his chest, the first he got in 1974 and the second was done in the early 1980's. He could not recall anyone other than counsel coming to talk to him about his case prior

to trial. The night before trial, counsel asked Petitioner about looking at his medical record to see if he had tattoos.

Petitioner testified that his counsel advised him prior to trial not to testify because of his prior criminal history, but that she did not go into detail as to how it could hurt him. However, counsel did tell him that regardless of his prior convictions, the decision to testify was up to him. Petitioner told her he did not want to testify if it was going to hurt him. He recalled that they discussed his decision regarding whether to testify twice prior to the trial and once during the trial itself.

In an order denying Petitioner's petition for post-conviction relief, the trial court held that the trial record was abundantly clear that "the jury was well informed of the issues in this case and resolved them against the Petitioner." The trial court further found that testimony revealed that "numerous hours had been spent with the Petitioner in preparation for trial and efforts had been made to locate individuals that would confirm the Petitioner's account of when he received his tattoos." The trial court reasoned that while trial counsel was unsuccessful in verifying the Petitioner's account of his history of tattoos in their effort to disprove the identity of Petitioner as the perpetrator of this offense, counsel was "still successful in getting the proof before the jury without having to subject the Petitioner to cross-examination about his prior record." In addition, any claims the Petitioner had regarding his right to testify were found to be without merit as "testimony of trial counsel from the prior hearings clearly indicate[d] that there were discussions about the [Petitioner] testifying and the risk therein."

We agree with the trial court that Petitioner's allegation that counsel was not adequately prepared nor did she fully investigate his case and interview witnesses is without merit. The testimony of trial counsel revealed that numerous hours were spent in preparation for trial and efforts were made to locate witnesses to verify when Petitioner received his tattoos. Petitioner also contends that counsel failed to find evidence demonstrating the existence and age of his tattoos until near the end of the trial. It is true that the photographs depicting the tattoos on Petitioner's chest were not discovered until nearly the end of the State's proof. However, testimony of trial counsel indicated a great effort on both her part and her investigators in their attempt to locate someone who could verify the existence and age of the Petitioner's tattoos prior to trial. The trial court found that trial counsel was successful in admitting a photograph demonstrating the tattoos on Petitioner's chest, therefore, we find that any error in the lateness of the hour was harmless.

Regarding Petitioner's decision of whether to testify at trial, the trial court found that he "was extremely vague on the number of discussions he had with trial counsel about his testifying at trial and was further unclear in his testimony about what information he had been provided." From our review of the record, it is clear that Petitioner's testimony reflects that counsel discussed the decision of whether to testify with Petitioner on at least three occasions, one of which occurred during the course of the trial. Trial counsel indicated that there were discussions with Petitioner during which the risks of testifying were discussed and that Petitioner's prior dealings with the criminal justice system indicate that he was informed of the risks of going to trial and testifying. While Petitioner may now wish he would have testified, we cannot find any prejudice in the advice of trial counsel regarding the possibility of his prior convictions being used to impeach his testimony.

After a thorough review of the record, briefs and the law in the case <u>sub judice</u>, we find that the Petitioner has not proven his allegations by a preponderance of the evidence. We agree with that trial court that Petitioner's trial counsel's preparation and performance did not fall below an objective standard of reasonableness, nor prejudice the defense provided to Petitioner.

We affirm the trial court's dismissal of Petitioner's petition for post-conviction relief.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
JERRY L. SMITH, Judge