IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 6, 2005

## LAKEISHA JONES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Haywood County**
**No. 4230     Jerry Scott, Judge**

---

**No. W2005-01229-CCA-R3-PC  - Filed December 27, 2005**

---

The Petitioner, Lakeisha Jones, was convicted of second degree murder, and the trial court sentenced her, as a violent offender, to fifteen years in prison.  The Petitioner's conviction and sentence were affirmed by this Court.  Subsequently, the Petitioner filed a pro se petition for post-conviction relief, which was later amended by appointed counsel.  After a hearing, the trial court dismissed the petition.  On appeal, the Petitioner contends that the trial court erred when it dismissed her petition for post-conviction relief because she received ineffective assistance of counsel at her trial.  Finding that there exists no reversible error, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

James S. Haywood, Jr., Brownsville, Tennessee, for the Appellant, Lakeisha Jones.

Paul G. Summers, Attorney General and Reporter; Jane L. Beebe, Assistant Attorney General; Gary G. Brown, District Attorney General; Garry Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**

        The Petitioner was indicted for second degree murder and aggravated assault, and she was convicted of second degree murder.  She appealed, contending that the evidence was insufficient to sustain her conviction and that the trial court improperly instructed the jury.  The facts, as summarized by our opinion on the direct appeal, viewed in the light most favorable to the State proved:

1

[T]hat the [Petitioner] unlawfully and knowingly killed the victim. The [Petitioner] testified that after she talked with Adrian Taylor, Ms. Taylor asked the [Petitioner] what she was going to do, and the [Petitioner] replied, "Nothing." The [Petitioner] then testified that she thought about the situation and decided to go to the trailer at 413 Carver Street. She took two knives with her and hid them in her pocket. At the trailer, the angry [Petitioner] confronted the victim. After the victim told the [Petitioner] to go away, the [Petitioner] pulled out the knives. The evidence shows that the victim saw the knives, grabbed the [Petitioner's] wrists, and struggled with the [Petitioner]. During the struggle, the [Petitioner] cut the victim's forehead and forearm and stabbed him in the chest. Although the [Petitioner] testified that she took the knives to the trailer with no intention of killing the victim and that the stabbing was an accident, a rational jury could have found that the victim was defending himself and concluded beyond a reasonable doubt that the [Petitioner] was aware that her conduct was reasonably certain to cause the victim's death.

State v. Lakeisha Jones, No. W2000-02962-CCA-R3-CD, 2002 WL 1558690, at *1-4 (Tenn. Crim. App. Jan. 25, 2002), *perm. app. denied* (Tenn. Sept. 23, 2002).

On July 30, 2003, the Petitioner filed a pro se petition for post-conviction relief in which she alleged that she received the ineffective assistance of counsel. The trial court appointed an attorney for the Petitioner, and the attorney filed an amended petition. In her petition, the Petitioner alleged that a juror who heard her case, Charlotte Hill, was related to the victim, and that her trial counsel was ineffective for failing to discover this relation. At the post-conviction hearing, the following evidence was presented:

Jeffrey Harris testified that the victim in this case was his first cousin. He said that he also thought that he was cousins with Charlotte Hill, but he later learned that they were not related. He said that he remained close friends with Hill. He said that Hill worked at Wal-Mart and that he socialized with her brothers. Jeffrey Harris testified that he knew that Hill and the victim talked in school, but he could not say how close they were. He said that, the morning before the post-conviction hearing, he approached Charlotte Hill, and the two discussed that they were not related. On cross-examination, Harris reiterated that he was not related to Charlotte Hill, and he said that he did not think that there was anything wrong with the Petitioner's trial. Harris said that he cannot recall a time when Charlotte Hill and Travis Harris interacted at a family reunion. On redirect examination, the trial court clarified Harris' family tree and noted that Jeffrey Harris testified that Willie Alice Harris was Harris' father's sister, making her Harris' aunt. Their father and mother were William Harris Senior and Flora Harris, respectively, who were also Harris' paternal grandfather and grandmother. Harris said that he thought that Charlotte Hill was related to William Harris Sr., but he said that he was mistaken. He said that he incorrectly thought that Geraldine Harris, who is Charlotte Hill's mother, was related to William Harris Sr. He said that William Harris, Sr., was still alive and lived on John Batchelor Road.

Willie Alice Harris testified that the victim was her son, Travis Harris. She said that her

father is William Harris, Sr., who lives on John Batchelor Road. She said that Geraldine Harris is not her father's sister, and the two are not related. She said that she did not know Charlotte Hill's mother, and she did not know Charlotte Hill. On cross-examination, Willie Alice Harris testified that she had never been around Charlotte Hill at a family reunion.

Charlotte Hill Bowers testified that she was a jury member at the Petitioner's trial. She said that her father's name is George Bowers, and her mother's name is Geraldine Hill. She said that she never thought that she was related to Jeffery Harris, and she and Jeffery Harris did not discuss whether they were related outside the court the morning of the post-conviction hearing. She said that she did talk to him, but they just discussed how she got involved in this case. Charlotte Hill Bowers listed her mother's brothers and sisters, and she said that she was not related to and did not know William Harris Senior who lives on John Batchelor Road. She said that she did know of the victim in this case because they went to school together, but she did not spend time with him. Hill Bowers testified that she did not know if her brothers were friends with Jeffrey Harris, and she said that she did not know Jeffery Harris. On cross-examination, Hill Bowers testified that she remembered being picked to be a juror in this case, and she remembered the judge asking if she knew the parties. She said that she answered to the best of her ability that she was not related to the victim in this case, and she did not know him. She said that she based her decision as a juror strictly on the evidence presented at trial.

Lakeisha Jones, the Petitioner, testified that she alleged in her post-conviction petition that Charlotte Hill was related to the victim. She said that her pastor was sitting in on the trial, and he heard Willie Alice Harris say that Charlotte Hill was her cousin and "what is she doing up there [on the jury]." She said that her pastor told her about this, and she told her trial counsel ("Counsel"), and Counsel set up appointments to get the pastor to sign an affidavit. The Petitioner said that Counsel never showed up at these meetings, and never got the affidavit signed. She said that her motion for new trial was dismissed because Counsel did not have a signed affidavit from the pastor. The Petitioner asked the judge to set aside the verdict and grant her a new trial.

On cross-examination, the Petitioner said that Counsel did not know that Charlotte Hill Bowers was allegedly related to the victim until after the trial. She said that Counsel was a solo practitioner when she hired him, but, after she hired him, he associated with Nathan Pride, who was the Harris' family's lawyer. She said that Nathan Pride is also the godfather to some of the Harris family members. The Petitioner also said that Counsel did not adequately defend her because he did not mention or argue to the jury the fact that the State did not test the knives for fingerprints, which may have excluded her as a suspect. She said that the detective who testified admitted that he did not conduct fingerprint tests, but Counsel did not "fight for [her]." She said that all the witnesses at her trial said that the victim fell on her knife and not that she stabbed him. She conceded that everyone who was at the house testified and that the jury heard this evidence. She also said that she testified at trial, and the jury heard her testimony. The Petitioner said that she believed that there was not enough evidence presented to convict her.

The Petitioner also testified that Counsel missed their scheduled appointments, and he was

late to court dates. She admitted that Counsel was present at the preliminary hearing, but she said that he did not do a good job. The Petitioner said that she did not know whether Counsel filed several motions on her behalf. About Counsel's investigation, the Petitioner said that Counsel presented all of the witnesses that were present at the stabbing, and there was no one else with whom he should have talked. She said that she wanted him to test the knives, but she conceded that it was pointed out during trial that this testing was not done. She also said that Counsel never relayed to her any plea offers by the State. She denied knowing that the State offered to have her plead guilty to second degree murder, which is the charge that the jury convicted her of at trial. She said that, had she known that the State was offering second degree murder, she would have insisted on going to trial.

Upon the trial court's questioning, the Petitioner testified that there were no other witnesses that Counsel could have called, but she said that the witnesses had an opportunity to conspire about their testimony. The Petitioner testified that she only had one knife and not two, as she testified at trial. She said that Counsel should have "subpoenaed to get the knives tested" because she was bleeding too. She said that Counsel could have proven that someone else stabbed the victim, but she is unsure what the evidence would have shown because she was unconscious at the time of the crime. She also said that Counsel should have obtained an affidavit from her pastor about what he heard. She conceded, though, that the witnesses at the post-conviction hearing had testified that the victim and juror Hill Bowers were not related. She said that she did not subpoena her pastor to testify because Jeffery Harris was supposed to testify that he was related to Charlotte Hill.

Counsel testified that he was retained by the Petitioner while this case was still in General Sessions Court. He said that she was not in custody at the time, but he was contacted by the Petitioner's father. Counsel said that he met with the Petitioner prior to the preliminary hearing to discuss her case. He said that they discussed potential witnesses in the case and the Petitioner's recollection of the sequence of events. Counsel testified that, at the preliminary hearing, he had the opportunity, and did, cross-examine all of the witnesses. Counsel recalled that the State's attorney was frustrated because he could not obtain the testimony that he wanted from the witnesses and, therefore, the cross-examination was not difficult.

Counsel described his investigation of this case. He said that he met with the Petitioner and the Petitioner's father several times. Counsel said that he explained to the Petitioner about the preliminary hearing and the grand jury process. He said that she was subsequently indicted for this crime, and he filed a motion for discovery. Counsel said that he received full discovery, and he was allowed to review every document in the State's file as well as interview the investigating detective. Counsel testified that he filed several motions, and he followed up on all the evidence that the Petitioner indicated should be investigated. Counsel said that this case primarily involved the witnesses' testimony, the Petitioner's testimony, and the murder weapons. Counsel testified that the Petitioner had given the police a statement but that Counsel and the Petitioner reviewed the statement and nothing in it made him want to suppress the statement. Further, he said that he did not see adequate grounds for a motion to suppress her statement. Counsel said that he did file a motion to exclude one statement allegedly made by the victim, but the trial court ruled that it was

4

admissible hearsay because it was an excited utterance.

Counsel testified that he relayed the State's offer for the Petitioner to plead guilty to second degree murder for an agreed fifteen year sentence, but the Petitioner told him that she was not guilty of that so she was not going to plead guilty to that offense. He told the Petitioner that, as a Range I offender, she was facing fifteen to twenty-five years. Counsel recalled that he discussed with the Petitioner potential defenses, one being that the Petitioner only had the knife to protect herself from her boyfriend and his alleged girlfriend. Counsel said that, at trial, there was conflicting testimony about how many knives the Petitioner had in her hand. He said that their defense was that the victim fell on the Petitioner's knife. Counsel testified that the Petitioner testified, and he told her the implications of testifying.

Counsel said that, before and during trial, he had no idea that one of the jurors was allegedly related to the victim. He said that he specifically asked the potential jurors if any of them knew the victim, and they all denied knowing the victim. After trial, the Petitioner told Counsel that the Petitioner's pastor may have heard something about a juror being related to the victim. He said that he called the pastor, and the pastor called him, but they missed each other. Counsel conceded that he had an appointment with the pastor that he missed, but he said that he did talk to him, and, when he did so, he learned that what he had heard was wholly inconsistent with what the Petitioner had told him that the pastor had heard. Counsel said that the pastor was not willing to sign an affidavit.

About Counsel's affiliation with Nathan Pride, Counsel testified that he shares office space with Pride, but he is not a partner or an associate. He said that he and Pride both have their own secretaries, and he was not and is not aware that Pride may have represented some members of the victim's family. He said that Pride is a civil lawyer and does not practice criminal law. Counsel said that he represented the Petitioner zealously.

On cross-examination, Counsel testified that he did not recall whether, when asked if she knew the victim, Charlotte Hill said that she went to school with the victim. He said that, if Charlotte Hill had so stated, he would have inquired further. He said that, if he had known that Charlotte Hill had eaten lunch with the victim eleven or twelve years ago, he would have asked her more questions about whether she could be impartial.

Based upon this evidence, the trial court dismissed the Petitioner's petition for post-conviction relief, finding:

> [The Petitioner's] sole ground for relief was the allegedly ineffective assistance of counsel . . . . While the Petitioner made various allegations that [Counsel] was ineffective, the only one that she purused was the allegation that he did not investigate the venire sufficiently to learn that one member of the jury panel who actually served was related to the victim. It was the Petitioner's position that juror Charlote Hill was related to the victim. The proof adduced at the hearing on the Petition for Post Conviction Relief reveals that [the victim] was the son of Willie

Alice Harris who was one of sixteen children born to William Harris, Sr. and wife, Flora Harris. The juror, Charlotte Hill, now Bowers, testified that she was one of fourteen children of George Bowers and Geraldine Hill.

Jeffrey Harris, a first cousin of the deceased victim, testified that he hangs around Charlotte Hill's brother, Kenny Hill. All he knew was that he had seen Charlotte Hill Bowers and the victim, Travis Harris, eating lunch together at school one time eleven or twelve years ago and that was the last time h[e] had seen them together.

The juror, Charlotte Hill Bowers[,] testified that she was not related to the victim, Travis Harris or [to] Jeffrey Harris. Under questioning by the Court, she explained her family relationships in great detail.

The Petitioner testified that during the trial her pastor (who did not testify at the post conviction relief proceeding) had told her that he heard Willie Alice Harris, the mother of the victim, ask someone why Charlotte Hill was sitting on the jury when she (Ms. Hill) was her second cousin. She testified that [C]ounsel . . . did not know about the alleged relationship prior to trial.

. . . .

[Counsel] testified that he represented the Petitioner at the preliminary hearing and through the trial. . . . As to the juror, he asked numerous questions during voir dire regarding any relationship of any juror to any witness. He noted that the Assistant District Attorney General also questioned the jurors about any relationships to anyone involved in the trial and that the Judge did likewise.

After the trial, [Counsel] was told that the pastor "heard something that could give rise to an issue." The pastor did not keep his appointment to meet with her counsel, but [Counsel] talked with him later. His statement was "at odds with" the statements by the Petitioner's family, so he did not seek an affidavit from the pastor and the pastor was not called by either side.

The trial court concluded, "It is clear from the evidence presented at the hearing that a familial relationship between the juror and the victim was not proven at all, much less by a preponderance of the evidence." Further, the trial court said, "It is absolutely clear that the Petitioner has failed to prove by a preponderance of the evidence that the advice given and the services rendered by her trial defense counsel were outside the range of competence demanded of criminal defense attorneys in Tennessee."

It is from this order of the trial court that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it determined that she had received the effective assistance of counsel and, therefore, dismissed her petition because she received the ineffective assistance of counsel. Specifically, she contends that Counsel was ineffective by failing to adequately investigate the relationship between juror Charlotte Hill Bowers and the victim, and the Petitioner asserts that she was prejudiced because this lack of investigation caused her to be convicted by a juror who either knew the victim or was related to him. The State counters that the Petitioner concedes that the information that Hill Bowers was allegedly related to the victim was not discovered until after the trial. Further, the State asserts that the pastor recanted this story, and Hill Bowers, as well as the victim's relatives, assert that they are not related. Therefore, the State contends that the Petitioner has failed to prove that Counsel's performance was deficient or that she was prejudiced.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a

particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); Thomas Brandon Booker v. State, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *perm. app. denied* (Tenn. June 21, 2004). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515.

We conclude that the evidence does not preponderate against the post-conviction court's finding that Counsel did not render the ineffective assistance of counsel. We note, as did the trial court, that there was no evidence presented that Hill Bowers was, in fact, related to the victim. Further, there was no evidence that Hill Bowers knew the victim well, but only that she ate lunch with the victim one time in high school and that her brothers knew the victim's cousin. Further, the Petitioner's pastor, who she claims overheard the victim's relative saying that she was related to Hill Bowers, did not testify at the post-conviction hearing, and Counsel testified that he spoke with the pastor, and the pastor did not provide useful information. Under these circumstances, we conclude that the Petitioner has not proven that the evidence preponderates against the trial court's finding that Counsel's performance did not fall below an objective standard of reasonableness. Further, we conclude that the Petitioner has not proven how she was prejudiced. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE