# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY SESSION, 1998

FILED

May 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **FREDRICK M. SLEDGE,** | ) | **C.C.A. NO. 02C01-9702-CR-00086** |
| | ) | |
| Appellant, | ) | |
| | ) | **SHELBY COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. JOSEPH B. DAILEY, JUDGE** |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee. | ) | **(POST-CONVICTION)** |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**HARRY E. SAYLE, III**              **JOHN KNOX WALKUP**
99 North Third Street                Attorney General & Reporter
Memphis, TN  38103
                                     **DEBORAH A. TULLIS**
                                     Assistant Attorney General
                                     2nd Floor, Cordell Hull Building
                                     425 Fifth Avenue North
                                     Nashville, TN  37243

                                     **JOHN W. PIEROTTI**
                                     District Attorney General

                                     **TERRELL L. HARRIS**
                                     Assistant District Attorney General
                                     201 Poplar Avenue - Third Floor
                                     Memphis, TN  38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Petitioner, Fredrick M. Sledge, appeals from the order denying his petition for post-conviction relief. In this appeal, Petitioner raises the following issues:

1) The trial court erred in waiving Petitioner's grounds for relief pursuant to Tennessee Code Annotated section 40-30-206(g).

2) The trial court erred in instructing the jury on reasonable doubt as the language of the instruction relieved the State of its burden of proof.

3) The trial court erred in determining that the appellant was not denied the effective assistance of trial counsel.

We affirm the judgment of the trial court.

Petitioner was convicted of two (2) counts of aggravated robbery and was sentenced to two consecutive sentences of ten (10) years for each conviction in the Criminal Court for Shelby County. Petitioner's direct appeal of those convictions was denied, State v. Fredrick Sledge, C.C.A. No. 02C01-9306-CR-00116, Shelby County (Tenn. Crim. App. , at Jackson, Aug. 10, 1994), and he filed a petition for post-conviction relief. After an evidentiary hearing, his petition for relief was denied by the trial court.

In post-conviction relief proceedings the petitioner has the burden of proving the allegations in his petition by a preponderance of the evidence. McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). Furthermore, the factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

WAIVER OF CLAIMS

In his first issue, Petitioner claims that the application of the waiver standard to his grounds for relief pursuant to Tennessee Code Annotated section 40-30-206(g) and House v. State, 911 S.W.2d 705 (Tenn. 1995), cert. denied, 116 S.Ct. 1685 (1996), violates his due process rights. Petitioner argues that his petition was governed by Tennessee Code Annotated section 40-30-101, the Post-Conviction Act repealed in 1995. Petitioner asserts that he has a constitutional right to rely upon the statute as written and in effect at the time of the behavior in question.

Defendant is correct in his assertion that his petition for post-conviction relief is determined pursuant to Tennessee Code Annotated section 40-30-112(b) as his petition for post-conviction relief was filed on April 23, 1995. The current Post-Conviction Act governs all petitions filed after May 10, 1995. See Compiler's Notes, Tenn. Code Ann. § 40-30-201. Under the provisions of the former statute, a ground for relief is waived if the petitioner knowingly and understandingly fails to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented. Tenn. Code Ann. § 40-30-112(b)(1). There is a "rebuttable presumption" that a ground for relief not raised in any such proceeding which was held was waived. Id. at (b)(2). In House, our supreme court determined that the rebuttable presumption of waiver is not overcome by an allegation that the petitioner did not personally and, therefore, "knowingly and understandingly," waive a ground for relief. House, 911 S.W.2d at 714. Waiver is determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney. Id.

The trial court found that by failing to present numerous grounds for appeal before a court of competent jurisdiction, Petitioner had waived all grounds for relief other than Petitioner's claim for ineffective assistance of counsel. Under this objective standard, Petitioner "knowingly and understandingly" waived these claims. Therefore, the post-conviction court's finding that Petitioner's grounds for relief were waived is correct.

Petitioner asserts that by applying this standard of waiver to his claim, the statutory change in the Post-Conviction Act is rendered "nugatory," and this subjects Petitioner to an *ex post facto* standard. In determining whether an *ex post facto* violation exists, there are five broad classifications:

1) A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.

2) A law which aggravates a crime or makes it greater than when it was committed.

3) A law that changes punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.

4) A law that changes the rules of evidence and receives less or different testimony than was required at the time of the commission of the offense in order to convict the offender.

5) Every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage.

State v. Pearson, 858 S.W.2d 879, 882 (Tenn. 1993); *citing* Miller v. State, 584 S.W.2d 758, 761 (Tenn. 1979).

Petitioner's claims obviously do not fit into these classifications. No law has been changed to which Petitioner is subject to for trial or punishment. Neither is Petitioner subject to a new law under the Post-Conviction Act as Petitioner's claims are subject to determination pursuant to the former Post-Conviction Act. There is no valid *ex post facto* argument, and this issue is without merit.

-5-

Petitioner argues that the instruction on reasonable doubt as charged to the jury relieved the State of its burden of proof. Petitioner's claim was not raised as a ground for relief in any prior proceedings. Therefore, this claim is waived pursuant to Tennessee Code Annotated section 40-30-112(b). Moreover, Petitioner has failed to include the trial court's charge to the jury as part of the record, and, therefore, we are precluded from considering this issue. Tenn. R. App. P. 24(b); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that the denial of post-conviction relief on the basis of ineffective assistance of trial counsel was error. He contends that trial counsel failed to interview and call alibi witnesses on his behalf to testify at trial. Petitioner states that if trial counsel had been prepared for trial, then he would have discovered and subpoenaed his alibi witnesses.

In reviewing the Petitioner's Sixth Amendment claim of ineffective assistance of counsel, this court must determine whether the advice given or the services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that

but for counsel's error the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694, 104 S.Ct. 2052, 2064, 2067-68, 80 L.Ed.2d 674 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).

This court should not second-guess trial counsel's tactical and strategic choices unless those choices were uninformed because of inadequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980).

During the post-conviction hearing, Petitioner testified that his mother, Minnie Sledge, hired trial counsel to represent him. He and trial counsel met prior to trial on four (4) or five (5) occasions, but Petitioner was not satisfied with the length of these meetings. During these meetings, Petitioner claimed he told trial counsel that he did not commit the robberies and had alibi witnesses, Tony Sledge and Brad Johnson, who could verify his activities on the evening of the robbery, December 13, 1991. Petitioner stated that Sledge and Johnson picked him up on the evening of December 13 between 7:00 and 7:30 p.m. They drove to a club in Victoria, Mississippi where they stayed for three (3) hours, then they went to another club in Olive Branch, Mississippi. They returned Petitioner to his home at approximately 3:00 a.m. Petitioner stated that he told his trial counsel that he could contact these two witnesses through Minnie Sledge. On cross-examination, Petitioner stated that he saw several other people that evening who could verify his alibi, but he did not give their names as potential witnesses to his trial counsel. He also confirmed that

he did not testify at trial, even though no other witnesses testified regarding his alibi.

Tony Sledge, Petitioner's brother, testified that he and his cousin Brad Johnson picked Petitioner up in the Cleaborn Homes area between 7:00 and 7:30 p.m. They drove to Club Elmores in Victoria, Mississippi, where they stayed for about thirty (30) minutes in the parking lot. They returned to Olive Branch where they went to a club called Sam Scales and remained until approximately 3:00 a.m. Sledge's girlfriend dropped him off at home and then drove Johnson and Petitioner to their homes. Sledge stated that he never met with Petitioner's trial counsel prior to the trial for aggravated robbery, but that he did call trial counsel on one occasion to tell him that "[he] could be there for him for that." Sledge did not come to Petitioner's trial for aggravated robbery because he did not know what date it would be held.

Brad Johnson testified that he was the cousin of the Petitioner. On December 13, 1991, he and Tony Sledge decided to go out and went to pick up Petitioner around 7:00 to 7:30 p.m. They drove to Olive Branch, Mississippi, where they drove around and talked. They went to Club Elmores in Victoria, Mississippi, and stayed for two (2) hours. Johnson stated that he went in the club, but Sledge and Petitioner remained outside. Sledge was "high" and throwing up, so Petitioner came in and asked Johnson to leave the club. They left and drove to Sam Scales, a club in Olive Branch, arriving there at approximately 2:00 a.m. They left Sam Scales at 3:00 a.m., and Johnson stated that Petitioner was driving. They dropped Tony Sledge off first, and then returned home. Johnson could not recall if any females were with them that night, but one of his friends was riding with them because he did not have a ride

home. Johnson recalled that no one contacted him regarding the possibility of his testifying prior to Petitioner's trial. During cross-examination, Johnson recalled that Tony Sledge's girlfriend was in the car on their way home from the clubs.

Trial counsel testified that he was hired by Petitioner's mother, Minnie Sledge, to represent Petitioner. Counsel met with Petitioner regarding several charges against him, including murder and aggravated robbery charges. Counsel stated that he investigated each charge and received discovery from the State so that he was fully aware of the proof and the witnesses the State intended to use against Petitioner. Counsel met with Petitioner at least four (4) to five (5) times prior to trial, primarily focusing upon the most serious charge of murder. Counsel received an offer from the State to plead guilty on all charges in exchange for a life sentence on the murder charge and two concurrent sentences for the aggravated robbery charges. Petitioner refused to plead guilty, despite counsel's advice that this was a good offer.

During trial preparation, Petitioner told counsel that he committed the aggravated robbery and had no defense or witnesses on his behalf. Counsel made written notes to that conversation. On one evening during Petitioner's aggravated robbery trial, Tony Sledge called counsel and identified himself as Petitioner's brother. Sledge notified counsel that he was with Petitioner on December 13, 1991, from 7:30 p.m. until 3:00 a.m. Counsel instructed Sledge to come to court the next day. Counsel was concerned because Tony Sledge was confused as to which night he was actually with Petitioner. There was another robbery which occurred on December 14, 1991, of which Petitioner was initially charged but was subsequently cleared, and counsel observed that Sledge was incorrect as to which evening he

-8-

was with the Petitioner. Counsel stated that Sledge did not appear the following morning at trial. Counsel thought it was very unusual because Petitioner had notified him earlier that same day that he had no witnesses on his behalf and had committed the robbery. Other than Sledge's phone call, no other family members offered to serve as an alibi for Petitioner, but several of his family members did testify for the State against Petitioner regarding his involvement in the robbery.

Following the post-conviction hearing, the trial court set forth in its findings of fact and conclusions of law that Petitioner's claim of ineffective assistance of counsel was dismissed. The trial court denied Petitioner's claim in light of the trial testimony and Petitioner's statements to counsel regarding his participation in the robbery. The trial court noted the inconsistencies between Petitioner's testimony and his alibi witnesses. Upon review of the record in this matter, there were obvious inconsistencies between Petitioner's testimony and that of his alibi witnesses, therefore, the trial court accredited the testimony of trial counsel. Questions concerning the credibility of the witnesses, and the weight and value to be given their testimony are to be resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Furthermore, the notes from Petitioner's file made by trial counsel indicate that Petitioner advised counsel that he had committed the offense and had no alibi witnesses. In order to prove trial counsel was ineffective, Petitioner's burden of proof was to overcome the findings of the trial court by a preponderance of the evidence. Petitioner has failed to meet this burden of proof, therefore this court is bound by the trial court's findings of fact. This issue is without merit.

We affirm the judgment of the trial court.

-9-

_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
JOSEPH B. JONES, Presiding Judge


_____
JOHN H. PEAY, Judge