IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1998 SESSION

FILED

December 7, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **ROBERT TERRY CROWSON,** | ) | |
| | ) | C.C.A. NO. 01C01-9802-CC-00077 |
| Appellant, | ) | |
| | ) | Bedford County |
| V. | ) | |
| | ) | Honorable William Charles Lee, Judge |
| **STATE OF TENNESSEE,** | ) | |
| | ) | (Post-Conviction) |
| Appellee. | ) | |

FOR THE APPELLANT:                    ___FOR THE APPELLEE:

Hershell D. Koger                     John Knox Walkup
Attorney at Law                       Attorney General & Reporter
131 N. 1st St.
P.O. Box 1148                         Lisa A. Naylor
Pulaski, TN 38478                     Assistant Attorney General
                                      425 Fifth Avenue North
                                      Nashville, TN 37243

                                      William Michael McCown
                                      District Attorney General

                                      Robert Crigler
                                      Assistant District Attorney General
                                      One Public Square, Suite 100
                                      Shelbyville, TN 37160

OPINION FILED:_____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

The petitioner was convicted by a jury of second degree murder and sentenced to eighteen and one-half years incarceration. His conviction and sentence were upheld on direct appeal. See State v. Robert Terry Crowson, No. 01C01-9503-CC-00086 (Tenn. Crim. App. filed Feb. 13, 1996, at Nashville). In July 1997, the petitioner filed for post-conviction relief alleging ineffective assistance of counsel at both his trial and on appeal. After a hearing the court below dismissed the petition, from which ruling the petitioner now appeals.[1] Upon our review of the record, we affirm the judgment of the post-conviction court.

In post-conviction relief proceedings the petitioner has the burden of proving the allegations in his petition by clear and convincing evidence. See T.C.A. § 40-30-210(f). Furthermore, the factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." See State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

The petitioner contends that his trial counsel was deficient in failing to investigate his mental condition, failing to interview and call two witnesses at trial, failing to put on proof that the victim had a knife, and failing to move to suppress the petitioner's statement. In reviewing the petitioner's Sixth Amendment claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, petitioner "must show that counsel's

---

[1]On this appeal, however, the petitioner limits his argument to his trial counsel. Accordingly, any contention regarding his appellate counsel has been waived. See T.C.A. § 40-30-206(g).

representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).

This Court should not second-guess trial counsel's tactical and strategic choices unless those choices were uninformed because of inadequate preparation, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); and counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. See Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980).

The reviewing court found that the only proof as to the petitioner's mental condition was the petitioner's own testimony that he had told his attorney before trial that he "wanted to see a psychiatrist" and thought he "should be admitted into a hospital." The court found that this "bare assertion" by the petitioner, uncorroborated by any independent proof that he had been suffering from some mental defect at the time of trial, was insufficient to carry his burden of proof. We agree. This issue is without merit.

As to the witnesses that defense counsel allegedly failed to interview and call at trial, these persons testified at the post-conviction hearing. The court below found,

> If anything, some of the statements that were made by the witness[es] today would have been detrimental to the defendant at trial. And counsel was probably -- not only was he not deficient in not calling those witnesses, he probably

exercised [a] wise tactical decision in not calling the
witnesses because they would have been more detrimental
than helpful to the petitioner's cause.

We agree. This issue is without merit.

The petitioner also contends that his trial lawyer was ineffective because he did not present testimony that the victim had been wielding a knife at the time the petitioner killed him. At his post-conviction hearing, the petitioner testified that the victim had attacked him with a knife. However, he admitted on cross-examination to having testified at trial that the victim had not had a knife and that a knife was not involved. Moreover, the petitioner presented no proof at the post-conviction hearing (other than his own testimony) that the victim had threatened or attacked him with a knife. Obviously, the petitioner's attorney could not pursue this line of defense under these circumstances. Indeed, as found by the hearing court,

If the defendant testified at trial there was not a knife and the only
[other testifying] . . . eye-witness . . . testified there wasn't a knife
involved, what was counsel to do? He can't fabricate something
that is just not there.

Today the defendant says there was a knife. He is the only one
that says that.

This issue is without merit.

Finally, the petitioner contends that his lawyer was ineffective in not moving to suppress his statement. Inexplicably, the hearing court failed to make any findings with respect to this allegation. The petitioner testified at his post-conviction hearing that he had told his attorney he had been "coerced into signing" a statement he had given to an assistant district attorney and a detective shortly after he shot the victim. Specifically, he testified

When I was brought in for questioning after leaving the hospital
from being sew[n] up, Mr. Reed was questioning me and I told him

> a little bit of what happened. Then I advised him that I wanted my
> right to an attorney to be present before I say any more. He then
> said well, you have told more or less the story. He said but you
> need to go ahead and finish it and sign this statement. I told him
> that I wanted an attorney present.
>
> That is when this other gentleman I didn't know at the time said I
> needed to sign the statement.
> . . .
> He stood up and said yeah, you need to tell us what happened and
> you need to tell us now. I asked the gentleman, I said what if I
> don't? He said well, I'm a district attorney, Gary Jones, and I will
> give you the F-ing chair if you don't sign the statement.

According to the petitioner, he signed the statement because of this threat by the assistant district attorney. He further testified that when he told his trial counsel about this, his lawyer "told [him] that [he] shouldn't say anything about the coercion."

Neither of the law enforcement officials involved in taking the petitioner's statement testified at the post-conviction hearing; neither did the petitioner's trial counsel. However, this Court found on the direct appeal of the petitioner's case that "Detective Reed recounted the circumstances surrounding the statement given by the defendant on the morning after the killing. He stated that he advised the defendant of his rights and that the defendant responded that he was able to talk." The remainder of Detective Reed's testimony recounted what the petitioner had told him and how it differed from the petitioner's testimony at the preliminary hearing. Apparently, the petitioner's written statement was not introduced at trial.[2]

Detective Reed's testimony at trial about what the petitioner had told him was summarized by this Court as follows:

> The defendant told Detective Reed that he, his mother and Mr.
> Pinkston had gotten into an argument over who would drive home
> from the bar the night before. They were still arguing when they
> returned home and the victim told the defendant not to cuss their

---

[2]This Court's opinion on direct appeal makes no reference to the petitioner's written statement. At the post-conviction hearing, the assistant district attorney, who also tried the case, told the court below that "There was no written statement by the defendant introduced as evidence in the trial."

mother. The victim hit the defendant and a fight ensued that lasted about three minutes. The defendant told Detective Reed that he wanted to get his mother's pistol from her bedroom in order to scare the victim. He remembered his mother warning the victim as he walked to the back bedroom for the gun. The defendant told Detective Reed that he thought the victim had a gun in his car. The defendant went to the bathroom to wipe his face and returned to the living room. He told Detective Reed that his mother always kept the pistol loaded.

Initially, the defendant told Detective Reed that the victim returned to the trailer and began fighting with him again. Later, the defendant said that the victim was in the front doorway when a struggle began and that he shot the victim while the victim was on top of him. He told Detective Reed that he tried to revive the victim with CPR for about twenty minutes and finally told Mr. Pinkston to call 911. When asked what happened to the gun, he reported that Mr. Pinkston took the gun away from him and hit him in the head with it after he shot the victim.

This Court further summarized the petitioner's own testimony at trial:

The defendant testified that he, his mother and Mr. Pinkston went to a local bar and drank ⊲a lot of beer' in the evening of November 6, 1993. They arrived home and began drinking again. The defendant stated that the victim had been arguing with him when the defendant's girlfriend arrived. He stated that they were sitting there when ⊲the next thing I know I get hit upside the head.' He testified that the victim hit him with the heating element and hit him more than once with his fist. He stated that the victim pointed his finger at him and threatened him before going outside. He testified that he went to his mother's room to get her pistol because he was scared that the victim had gone to get his .32 pistol from his car. He recalled that as he looked out the window of the door, the victim pushed the door open and began assaulting him again. He could not recall how the pistol was fired but testified that he did not intentionally pull the trigger and shoot the victim. He stated that the gun fired during the scuffle. He testified that he tried to perform CPR on the victim and finally called 911. He said that this was the worst that the victim had ever beaten him and that he was terrified of the victim.

Thus, both the petitioner's oral statement to Detective Reed and his own trial testimony stressed his fight with and fear of the victim, making out a theory of self-defense. That is, the petitioner's trial testimony was essentially consistent with his earlier statement to the police. On the record before us, therefore, we do not see how Detective Reed's testimony about the petitioner's statement prejudiced him at trial.

-6-

Accordingly, even if trial counsel was deficient in not attempting to suppress the petitioner's statement,[3] we find that he was not thereby prejudiced. This issue is without merit.

The judgment of the post-conviction court is affirmed.

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____

_____

[3]We do not imply that he was.

JOSEPH M. TIPTON, Judge

_____
JOE G. RILEY, Judge